IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAN BUETTGEN, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | No. 3:09-CV-0791-K (Consolidated with Nos. |
| KATHERINE J. HARLESS, et al., | § § | 3:09-CV-0938-K, 3:09-CV-1049-K and 3-09-CV- |
| Defendants. | § | 1552-K.) |

## MEMORANDUM OPINION AND ORDER

Before the Court are four competing motions for appointment of lead plaintiff and lead plaintiff's counsel filed by: (1) Jan Buettgen, Donald B. Biggerstaff, David Boon, and Matthew Craig (collectively the "Buettgen Group") (Doc. No. 7); (2) James Lyman and John W. Bennett (collectively the "Lyman Group") (Doc. No. 8); (3) Aldan Ag (Doc. No. 11); and (4) Kentucky State District Council of Carpenters Pension Trust Fund ("Pension Trust Fund") (Doc. No. 14). For the following reasons, the Court **GRANTS** the Pension Trust Fund's motion. The remaining motions for lead plaintiff are **DENIED**.

## I.    Factual Background

Idearc, Inc. ("Idearc"), through its subsidiaries, provides yellow and white page directories and related advertising products. Plaintiffs purchased shares in Idearc during the purported class period of August 10, 2007 and March 31, 2009. In this consolidated

- 1 -

class action of three cases, Plaintiffs assert violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, as well as, a violation of Section 20(a) of the Exchange Act.  Plaintiffs claim that Defendants: (1) sold to non-credit-worthy customers to report tens of millions of dollars of uncollectible receivables; (2) issued materially false and misleading statements; (3) failed to disclose material facts necessary to make Defendants' statements not false and misleading; and (4) caused a significant deterioration of Idearc's finances as a result of the false statements.  Because of Defendants' actions, Plaintiffs allege the price of Idearc stock was artificially inflated through March 2009.

## II.    Legal Standard

Under the Exchange Act, the Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the appointment of lead plaintiff and lead counsel in class actions. 15 U.S.C. § 78u-4(a)(3).  The PSLRA requires the Court to appoint the "most capable" member or members of the purported plaintiff class who can adequately represent the class members' interest. *Id.* § 78u-4(a)(3)(B)(I).  The statute requires a court to presume that the most adequate plaintiff is the person or group of persons that:

> (1) filed the complaint or a motion in response to a notice;
>
> (2) has the largest financial interest in the relief sought by the class; and
>
> (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).  This presumption can be rebutted only by proof offered by a class member that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u-4(a)(3)(B)(iii)(II).

## III.    Appointment of Lead Plaintiff

Because all four movants properly filed motions requesting appointment as lead plaintiff, the Court need only address the second and third factors.

### A.    Largest Financial Interest

In determining the largest financial interest, courts look to:  (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs.  *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002);  *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997).  In looking at all four factors, the evidence establishes the Buettgen Group sustained the largest loss, with approximate losses of $554,909, while Aldan Ag, the Lyman Group, and the Pension Trust Fund lost $367,939, $359,352, and $154,330 respectively.

B.      Federal Rule of Civil Procedure 23

The requirements of Rule 23 must also be met for a plaintiff or group of plaintiffs to be presumed the most adequate.  In the selection of lead plaintiff, the only relevant factors of Rule 23 are typicality and adequacy.  *See in re Waste Management, Inc.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000).  Rule 23 provides, in pertinent part, that the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)–(4).  The inquiry at this stage is not as searching as would follow a motion for class certification, yet the plaintiff or group of plaintiffs must make some showing that its claims are typical of the putative class and that it has the capacity to adequately represent the class.  *See in re Waste Management, Inc.*, 128 F. Supp. 2d at 411.

The question in determining "typicality" is whether the named plaintiff's claims have the same essential characteristics as those of the other class members; they arise from the same event or course of conduct, and are based on the same legal theory.  *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)); *Longden v. Sunderman*, 123 F.R.D. 547, 556 (N.D. Tex. 1988).  Factual differences will not defeat typicality as there is no requirement the claims be identical.  *See Stirman*, 280 F.3d at 562.  The "adequacy" requirement is fulfilled if there are no conflicts of interests between the named plaintiff and other class

members and the named party is prepared to prosecute the action vigorously.  *See Longden*, 123 F.R.D. at 557.

The Pension Trust Fund contends that both the Buettgen Group and the Lyman Group will not fairly and adequately protect the interests of the class, because both groups fail to establish cohesiveness as a group.  This Court must "consider whether an appointment of previously unrelated persons best serves the interest of the class and whether a sufficient governance structure is in place to assure that those individuals will actually manage the litigation." *In re Carreker Corp. Sec. Litig.*, Civil Action No. 3:03-CV-0250-M, 2003 U.S. Dist. LEXIS 25988, at *10–*11 (N.D. Tex. Aug. 14, 2003).  A group should not be created "merely by counsel's giving a common name to previously unrelated people, who present no detailed structure by which they will operate." *Id.* at *10; *see In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (Allowing "an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."*).*  "[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation." *Tsirekidze v. Syntax-Brillian Corp.*, Nos. CV-07-2204-PHX-FJM, CV-07-2454-PHX-ROS, CV-07-2524-PHX-ROS, CV-07-2525-PHX-SRB, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008).  The Buettgen Group and Lyman Group must demonstrate the cohesiveness of their purported groups.  However, both groups fail to do so.

The Buettgen Group consists of four individuals.  The Buettgen Group claims that

the "Movants are aware of their filing as a group." Buettgen Group Br. 2 n.3. But, the Buettgen Group fails to present evidence that the members of the group have ever communicated in a meaningful way. For example, instead of explaining how they are prepared to work together to manage this litigation on behalf of the proposed class, the Buettgen Group submitted essentially boilerplate certifications discussing their stock purchases and alleged losses. Buettgen Group Br. Exh. A at 3, 6, 8, 20. In view of this lack of evidence, there is no basis from which to ascertain the ability of the Buettgen Group as a whole, or its members, to fairly and adequately represent the interests of the class. *See Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) (There was no "joint affidavit or declaration from the group members concerning their cohesiveness, any mechanism for making decisions, or any explanation of why the four *individuals*, only two of whom had any prior relationship, had been selected and would intend to proceed as a lead plaintiff.") (emphasis in original).

Additionally, the Buettgen Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate. Buettgen Group Br. 1 n.2. Such a "willingness to abandon the group only suggests how loosely it was put together." *Tsirekidze*, 2008 WL 942273, at *3 (rejecting group's suggestion that court "pluck one of its top-two constituents to serve as lead plaintiff"). Consequently, the Buettgen

Group is not entitled to the presumption that it is the most adequate plaintiff because it has not made the required preliminary showing that it would adequately represent the class.

Likewise, the Lyman Group suffers from the same grouping issues that apply to the Buettgen Group. The Lyman Group consists of two individuals that provided similar boilerplate certifications as the Buettgen Group. Lyman Group Br. Exh. 1 at 2–7. Also, the Lyman Group states, "if the Court is inclined to appoint only one Lead Plaintiff, each of the Movants moves in the alternative for appointment individually as Lead Plaintiff." Lyman Group Br. 1 n.1. As stated above, when a group shows willingness to abandon the group the Court is lead to believe the group was only loosely put together. *Tsirekidze*, 2008 WL 942273, at *3.

Without a showing of cohesiveness the Court is "left with little additional understanding of, for example, how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and the mechanisms by which the group members and counsel would communicate with one another about the litigation." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, Civil Action No. 09-CV-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *15 (D. Colo. May 4, 2009). Like the Buettgen Group, the Lyman Group has provided "no rationale for this grouping other than to manufacture the greatest financial interest in order to be appointed lead plaintiff." *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140

MHP, 2008 WL 3925289, at *9 (Aug. 22, 2008); *Tsirekidze*, 2008 WL 942273, at *5 (rejecting group because "[t]here is simply no evidence that this 'group' has a meaningful connection"). The Lyman Group fails to demonstrate cohesiveness. Thus, the Court concludes that the Lyman Group is not the most adequate plaintiff.

Aldan AG has the next largest financial interest. But, because Aldan AG is a Swiss entity, it may be "subject to unique defenses that render" it "incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). Specifically, there is a "risk that foreign courts would not give the Court's judgment *res judicata* effect." *Steinberg v. Ericsson LM Tel. Co.*, No. 07 Civ. 9615(RPP), 2008 WL 1721484, at *1 (S.D.N.Y. 2008) (denying foreign investor's motion to reconsider court's denial of its lead plaintiff application). In *Bersch v. Drexel Firestone, Inc.*, the Second Circuit directed the district court on remand to "eliminate from the class action all purchasers other than persons who were residents or citizens of the United States" because "Switzerland . . . would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens, even assuming that the citizens had in fact received notice that they would be bound unless they affirmatively opted out of the plaintiff class." 519 F.2d 974, 996–97 (2d Cir. 1975); *see Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 179 (S.D.N.Y. 1995) ("Switzerland . . . would not recognize a judgment rendered by an American court").

The problem boils down to the fact that if this Court's judgment on the merits

does not protect a prevailing Defendant against relitigation in Switzerland, nor grants a prevailing Switzerland Plaintiff an enforceable damage judgment, then for those litigants a class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3)). It appears there is no formal treaty between Switzerland and the United States requiring either jurisdiction to recognize and enforce judgments. Thus, entrusting Aldan AG with the responsibility of prosecuting a case where the lead plaintiff might be plagued with *res judicata* issues jeopardizes the interests of the entire class if Defendants *res judicata* arguments prevail. Thus, Aldan AG is not the most adequate plaintiff.

The Pension Trust Fund has the next highest financial interest. But, unlike the other movants, the Pension Trust Fund meets the typicality and adequate representation requirements of Rule 23. The Pension Trust Fund demonstrated it purchased shares of Idearc stock during the class period, as did the other class members, which subsequently lost significant value as a result of Defendants' actions and false statements. The Pension Trust Fund is not subject to any special defenses which Defendants might assert against them that the other class members would not be subject. Finally, there is no evidence of any conflicts between the Pension Trust Fund members and the other class members.

The Pension Trust Fund has established its entitlement to be presumed the most adequate named plaintiff. Furthermore, this presumption has not been sufficiently

rebutted.  Consequently, the Court **GRANTS** the Pension Trust Fund's motion for appointment as lead plaintiff.

## IV.    Lead Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Pension Trust Fund seeks to appoint Coughlin, Stoia, Geller, Rudman & Robbins, LLP as Lead Counsel for the class and Kendall Law Group, LLP as Liaison Counsel.  The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action.

## V.    Conclusion

Accordingly, the Court **GRANTS** the Pension Trust Fund's motion for appointment as lead plaintiff, the law firms of Coughlin, Stoia, Geller, Rudman & Robbins, LLP as lead counsel for the class, and Kendall Law Group, LLP as liaison counsel.

**SO ORDERED**.

Signed November 9th, 2009.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE